Maxwell B. Llewellyn and Gertrude Llewellyn v. Commissioner.
Llewellyn v. Commissioner
Docket No. 69807.
United States Tax Court
T.C. Memo 1960-197; 1960 Tax Ct. Memo LEXIS 93; 19 T.C.M. (CCH) 1023; T.C.M. (RIA) 60197; September 22, 1960
*93 Certain annuity contracts were purchased in 1953 and 1954. For practical purposes, they were paid for out of petitioner's (Maxwell's) compensation, and the transactions were the same, in effect, as if compensation had been paid directly to Maxwell and by him paid to the insurance companies as premiums for the annuity contracts. Held: That the annuity contracts in question were not purchased by Maxwell's employers for Maxwell as an employee within the meaning of section 22(b)(2)(B) of the 1939 Code as to purchases in 1953 or within the meaning of the then section 403(a)(1) of the 1954 Code as to purchases in 1954. Additions to tax under section 294(d)(2) of the 1939 Code sustained. Hiram M. Nowlan, Esq., 17 North Franklin Street, Janesville, Wis., for the petitioners. Rex A. Guest, Esq., for the respondent. FISHER
Memorandum Opinion FISHER, Judge: Respondent determined deficiencies in income tax and additions to tax of the petitioners as follows: Addition
to the Tax
Sec. 294(d)(2),
Year
Income Tax
I.R.C. 1939
1953
$1,981.18
1954
4,012.63
$217.57
The issues presented are (a) whether certain annuity contracts purchased in 1953 and 1954 were purchased by Maxwell's employers for Maxwell as an employee within the meaning of section 22(b)(2)(B) of the 1939 Code as to purchases in 1953 or within the meaning of the then section 403(a)(1) of the 1954 Code as to purchases in 1954, and (b) whether respondent erred in determining addition to *96 tax for the year 1954 under section 294(d)(2) of the Code of 1939. All of the facts are stipulated and are, accordingly, incorporated herein by reference. The petitioners, Maxwell B. Llewellyn and Gertrude Llewellyn, are husband and wife residing at Janesville, Wisconsin. They filed timely joint Federal income tax returns for the taxable years 1953 and 1954 with the district director of internal revenue for the district of Wisconsin at Milwaukee, Wisconsin. Since Gertrude Llewellyn is a party to this proceeding only because she and her husband filed joint returns for the years in question, Maxwell B. Llewellyn will hereinafter be referred to as petitioner. Petitioner is, and was at all times material hereto, a physician duly licensed to practice medicine in the State of Wisconsin and is a specialist in pathology, certified by the American Board of Pathology in pathologic anatomy. At all times material hereto, Fort Atkinson Memorial Hospital Association (hereinafter referred to as Fort Atkinson Hospital), a corporation organized and existing under the laws of the State of Wisconsin, operated a hospital located at Fort Atkinson, Wisconsin, and was exempt from Federal income tax *97 pursuant to section 101, Internal Revenue Code of 1939, and pursuant to section 501(a) of the Internal Revenue Code of 1954. At all times material hereto, Mercy Hospital, a corporation organized and existing under the laws of the State of Wisconsin, operated a hospital located at Janesville, Wisconsin, and was exempt from Federal income tax pursuant to section 101 of the Code of 1939 and pursuant to section 501(a) of the Code of 1954. Both Fort Atkinson Hospital and Mercy Hospital were organizations described in section 101(6) of the Code of 1939 and section 501(c)(3) of the Code of 1954. On August 19, 1950, petitioner and Fort Atkinson Hospital entered into a written agreement relating, among other things, to services to be performed by petitioner as a pathologist and as director of clinical and pathological laboratories for the hospital and the remuneration to be received by petitioner therefor. Under the terms of said agreement, Fort Atkinson Hospital agreed to pay to petitioner for services rendered thereunder an amount equal to 30 per cent of the gross receipts of the laboratory, subject to the adjustments recited therein, which amount was to be paid *98 in monthly payments on or before the 10th day of each month based on gross receipts for the preceding month. This agreement by its terms was made effective for the period beginning September 1, 1950, and ending August 31, 1951, with the further provision that it be automatically renewed from and after August 31, 1951, for an indefinite period. Such renewal period was made subject to termination by either party upon giving 90 days notice. The agreement referred to in the preceding paragraph remained in force and effect continuously from the date of its execution through the year 1954, except as amended by the parties thereto by written document executed on December 30, 1953. The amendment related to paragraph 8 of the original agreement and added the following provisions thereto: The Hospital further agrees that out of the thirty per cent (30%) of the monthly gross receipts of the Laboratory for the months of November and December, 1953, the Hospital shall subtract the sum of Four Hundred Forty-one and 25/100 Dollars ($441.25) for each of said months and that such sums shall be remitted directly to the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, through the office *99 of said company at Suite 1022 Bankers Building, 208 East Wisconsin Avenue, Milwaukee, Wisconsin, for the purchase by the Hospital of said company's retirement income annuity policy number 1,145,314, the same being an annuity contract for the benefit of the Doctor, providing for a monthly income of One Hundred and 00/100 Dollars ($100.00) after age sixty (60), and that, commencing with the month of January, 1954, the Hospital shall subtract from thirty per cent (30%) of the gross income of the Laboratory the sum of Two Hundred Forty and 68/100 Dollars ($240.68) and shall remit the same to said insurance company at the address hereinbefore stated and shall continue such monthly payments for all months of the year for an indefinite period hereafter and until such time as this contract may be properly amended by both parties to provide otherwise. All monthly payments as provided for the years of 1954 and thereafter shall be applied by said insurance company to the purchase by the Hospital, during the year in which said payments are made, of such further annuity contracts of a similar nature as the amount of said payments will provide and for the payment of premiums on existing annuity *100 contracts. At no time while this contract is in force and effect and contains this provision shall the Doctor have any right whatever to himself receive any of the moneys which it is herein agreed shall be paid to said insurance company and such payments shall be made by the Hospital directly to said insurance company and only for the purpose or purposes herein stated, and all such sums as are paid to said insurance company in accordance with the provisions hereof shall be subtracted from the thirty per cent (30%) of the gross receipts of the Laboratory as herein defined insofar as said percentage is used as a basis of computing the compensation owing by the Hospital to the Doctor. It is understood that the Doctor shall be the sole owner and beneficiary of said annuity contract or contracts and the Hospital agrees that if, for any reason, the payments herein provided are not made to said insurance company, said Hospital will promptly notify the Doctor of the fact of such nonpayment and of the reason or reasons therefor. In all other respects the provisions of the original agreement remained unchanged. On June 12, 1951, petitioner and Mercy Hospital entered into a written agreement *101 relating to services to be performed by petitioner as a pathologist and as director of pathological and clinical laboratories for the hospital and the remuneration to be received by petitioner therefor. Under the terms of the agreement, Mercy Hospital agreed to pay to petitioner as remuneration for services rendered a sum equal to 25 per cent of the monthly gross income of the laboratory, as defined therein, which sum to be paid to petitioner on or before the 10th day of each calendar month based on the gross income of the preceding month. This agreement by its terms was made effective as of January 1, 1951, and was to continue in force and effect thereafter so long as petitioner performed his duties under the terms thereof. The agreement referred to in the preceding paragraph remained in force and effect continuously from the date of its execution through the year 1954, except as amended by the parties thereto by written document executed on December 29, 1953. The amendment related to Subparagraph A of Paragraph IX of the original agreement and added the following provisions thereto: The Hospital further agrees that out of the twenty-five per cent (25%) of the monthly gross *102 income of the Laboratory for the months of November and December, 1953, the Hospital shall subtract the sum of Three Thousand Five Hundred Thirty and 00/100 Dollars ($3,530.00), and that such sum shall be remitted directly to the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, through the office of said company at Suite 1022 Bankers Building, 208 East Wisconsin Avenue, Milwaukee, Wisconsin, for the purchase by the Hospital of said company's retirement income annuity policy number 1,144,112, the same being an annuity contract for the benefit of the Doctor, providing for a monthly income of Four Hundred and 00/100 Dollars ($400.00) after age sixty (60), and that, commencing with the month of January, 1954, the Hospital shall subtract from twenty-five per cent (25%) of the gross income of the Laboratory the sum of Seven Hundred Six and 00/100 Dollars ($706.00) and shall remit the same to said insurance company at the address hereinbefore stated and shall continue such monthly payments for all months of the year for an indefinite period hereafter and until such time as this contract may be properly amended by both parties to provide otherwise. All monthly payments as provided *103 for the years of 1954 and thereafter shall be applied by said insurance company to the purchase by the Hospital, during the year in which said payments are made, of such further annuity contracts of a similar nature as the amount of said payments will provide and for the payment of premiums on existing annuity contracts. At no time while this contract is in force and effect and contains this provision shall the Doctor have any right whatever to himself receive any of the moneys which it is herein agreed shall be paid to said insurance company and such payments shall be made by the Hospital directly to said insurance company and only for the purpose or purposes herein stated, and all such sums as are paid to said insurance company in accordance with the provisions hereof shall be subtracted from the twenty-five per cent (25%) of the gross receipts of the Laboratory as herein defined insofar as said percentage is used as a basis of computing the compensation owing by the Hospital to the Doctor. It is understood that the Doctor shall be the sole owner and beneficiary of said annuity contract or contracts and the hospital agrees that if, for any reason, the payments herein provided are *104 not made to said insurance company, said Hospital will promptly notify the Doctor of the fact of such nonpayment and of the reason or reasons therefor. In all other respects the provisions of the original agreement remained unchanged. At the request of both Mercy Hospital and Fort Atkinson Hospital and as a condition to the execution by such hospitals of the above-mentioned documents amending the original agreements, petitioner by instrument dated December 30, 1953, agreed to save harmless and indemnify both Mercy Hospital and Fort Atkinson Hospital from any and all penalties, payments, interest, or any other loss of a pecuniary nature whatsoever which may in the future be assessed or arise because of the manner which said hospitals have in the past, or will in the future, treat petitioner's situation as to social security, withholding tax, and annuity premium payments. For the taxable year 1953, neither Mercy Hospital nor Fort Atkinson Hospital withheld FICA taxes or withholding tax from amounts paid to petitioner. Both of said hospitals did withhold FICA taxes and withholding tax from the amounts paid to petitioner during the year 1954. Petitioner performed services at both *105 Mercy Hospital and Fort Atkinson Hospital as resident pathologist and director of clinical and pathological laboratories during the years 1953 and 1954 as specified in the agreements, and amendments thereto. During the years 1953 and 1954, Phoenix Mutual Insurance Company issued its retirement income annuity policies No. 1,144,112, No. 1,145,314, No. 1,158,504, No. 1,158,505, No. 1,166,815, and No. 1,178,733 to petitioner as owner thereof. Said policies were issued in response to applications made and executed by petitioner as proposed insured. The dates of issuance of said policies, the dates of applications therefor, and the amount of annual premiums due thereunder are as follows: Date Policy
Date of
Annual
Policy No.
Issued
Application
Premium
1,144,112
12/ 3/53
11/27/53
$3,530.00
1,145,314
12/17/53
11/27/53
882.50
1,158,504
5/25/54
4/29/54
882.50
1,158,505
5/25/54
4/29/54
3,530.00
1,166,815
8/ 1/54
7/17/54
882.50
1,178,733
12/28/54
12/ 9/54
1,407.75
At no time did either Mercy Hospital or Fort Atkinson Hospital have ownership or possession of the aforesaid retirement income annuity policies, and neither of said hospitals *106 made written application to, or negotiated with, Phoenix Mutual Life Insurance Company for the issuance thereof. Fort Atkinson Hospital remitted to Phoenix Mutual Life Insurance Company of Hartford the following amounts on the dates indicated, which were deducted from the "(30%) of the monthly gross receipts" due under the contract for the months indicated and which were applied in payment of premiums on the policies on the dates designated: Date of
Amount
Remittance
Remitted
Due for Month of
Policy No.
Date Applied
12/31/53
$ 882.50
$441.25 - Nov. 1953
1,145,314
1/ 4/54
441.25 - Dec. 1953
2/ 4/54
240.68
Jan. 1954
1,158,504
5/21/54
3/ 9/54
240.68
Feb. 1954
1,158,504
5/21/54
4/ 6/54
240.68
Mar. 1954
1,158,504
5/21/54
5/ 5/54
240.68
Apr. 1954
$160.46 - 1,158,504
5/21/54
80.22 - 1,668,815
8/16/54
6/ 3/54
240.68
May 1954
1,166,815
8/16/54
7/ 1/54
240.68
June 1954
1,166,815
8/16/54
8/ 4/54
240.68
July 1954
1,166,815
8/16/54
9/ 3/54
240.68
Aug. 1954
$ 80.24 - 1,166,815
8/16/54
160.44 - 1,145,314
12/ 8/54
10/ 4/54
240.68
Sept. 1954
1,145,314
12/ 8/54
11/ 3/54
240.68
Oct. 1954
1,145,314
12/ 8/54
12/ 7/54
240.68
Nov. 1954
1,145,314
12/ 8/54
1/10/55
240.68
Dec. 1954
1,178,733
2/25/55
*107 Mercy Hospital remitted to Phoenix Mutual Life Insurance Company of Hartford the following amounts on the dates indicated, which were deducted from the "(25%) of the monthly gross income" due under the contract for the months indicated, and which were applied in payment of premiums on the policies on the dates designated: Date of
Amount
Remittance
Remitted
Due for Month of
Policy No.
Date Applied
12/30/53
$1,819.07
Nov. 1953
1,144,112
1/20/54
1/15/54
1,717.41
Dec. 1953
$1,710.93 - 1,144,112
1/20/54
6.48 - 1,158,505
6/25/54
2/17/54
699.52
Jan. 1954
1,158,505
6/25/54
3/12/54
706.00
Feb. 1954
1,158,505
6/25/54
4/15/54
706.00
Mar. 1954
1,158,505
6/25/54
5/25/54
706.00
Apr. 1954
1,158,505
6/25/54
6/21/54
706.00
May 1954
1,158,505
6/25/54
7/21/54
706.00
June 1954
1,144,112
12/ 8/54
8/24/54
706.00
July 1954
1,144,112
12/ 8/54
9/30/54
706.00
Aug. 1954
1,144,112
12/ 8/54
10/26/54
706.00
Sept. 1954
1,144,112
12/ 8/54
11/24/54
706.00
Oct. 1954
1,144,112
12/ 8/54
12/31/54
706.00
Nov. 1954
1,178,733
2/25/55
2/24/55
706.00
Dec. 1954
-/ -/55
The remittances by the hospitals to Phoenix *108 Mutual Life Insurance Company referred to in the two preceding paragraphs were not included in income reported on petitioners' income tax returns filed for the years 1953 and 1954. During February 1956, petitioner assigned the aforementioned policies No. 1,144,112, No. 1,145,314, No. 1,158,504, No. 1,158,505, No. 1,666,815 and No. 1,178,733 to Merchants and Savings Bank, Janesville, Wisconsin, as additional collateral security for loan made by said bank in the amount of $21,000 to petitioner. After initial delivery to petitioner and prior to such assignment the aforesaid policies at all times remained in the possession, custody, and control of petitioner. Phoenix Mutual Life Insurance Company did not render bills to either Mercy Hospital nor Fort Atkinson Hospital for premiums due on the annuity policies here involved during the years 1953 and 1954. Sister Mary Mira, R.S.M., Superior of the Provincial House and member of the governing board of Mercy Hospital, received a letter dated December 21, 1953, from John C. Wickhem, attorney for petitioner, which contained the following statements: Dr. Llewellyn has requested that the balance of moneys due to him from the hospital (covering *109 the months of November, 1953, and December, 1953) up to $3,550.00 be paid directly to the Phoenix Mutual Insurance Company for the purchase of such an annuity contract and that, commencing February 10, 1954, the hospital regularly pay the sum of $706.00 to the same insurance company for repeat premiums on the same policy and for the purchase of additional policies of annuity insurance. All of these amounts, of course, are to be credited by the hospital against sums that otherwise would be owing and payable directly to the pathologist under his existing contractual basis for compensation. As legal counsel to Dr. Llewellyn, we are advising him that he properly comes within the provisions of the ruling cited and the doctor's regular accountant, who holds a U.S. Treasury Department card and is a CPA, is also so advising him. We know of no possible liability that the hospital may be exposed to by paying premiums directly to the insurance company at the doctor's request. So that there can be no question whatever as to this, however, we have prepared a release and indemnity agreement from the doctor to the hospital saving the hospital harmless as to this procedure in paying his compensation *110 under his contract. Also, from the standpoint of having a clear picture on this matter, you should be advised that Dr. Llewellyn is also employed as pathologist at the Fort Atkinson Memorial Hospital, Fort Atkinson, Wisconsin, and that hospital is planning on making annuity premium payments to the same insurance company for the doctor's benefit. May we suggest that you discuss this letter with your own attorneys so that they may answer for you any legal questions that we have not gone into in this letter? The tax advantages to the doctor of having the hospital follow this procedure are substantial and, in order to have the full benefit of them, prompt action will be necessary. If you require any further information as to the factual details in Dr. Llewellyn's situation, do not hesitate to place a collect telephone call to us. Upon careful analysis of all of the stipulated facts, we conclude that the annuities in question were paid for out of petitioner's compensation and that a realistic appraisal leaves no doubt that the annuity transactions were the same in effect as if the total compensation had been paid directly to petitioner and that he thereupon purchased the annuities from *111 such funds. That circumlocution was avoided does not change the essence of what actually happened, or the end result. This being the case, we hold that there is no occasion here to apply principles of construction differing from those announced in Morris Zeltzerman, 34 T.C. No. 8 (filed April 18, 1960) (On appeal C.A. 1), in which he held that the annuity contracts were not purchased by the hospitals as employers for the taxpayer as employee within the meaning of section 403(a)(1). [1]
*112 Morris Zeltzerman, supra, involved only years to which the 1954 Code was applicable. The same applies to the instant case as far as the year 1954 is concerned. As to 1953, in the instant case section 22(b)(2)(B) [2] of the 1939 Code is applicable, but the operative language of that section is the same to the extent material to this discussion. *113 In view of the full discussion in Zeltzerman, there is no occasion for us to extend our discussion except to say that we note that petitioner argues that section 1.403(a)-1 of the Income Tax Regulations are invalid. Since we have reached a conclusion adverse to that of petitioner without reliance upon the regulation above referred to, it is unnecessary for us to discuss the question of its validity vel non. On the basis the foregoing discussion, therefore, we sustain respondent's determination that the annuity premiums in question are includible in petitioner's gross income. The addition to tax under section 294(d)(2) of the 1939 Code for the year 1954 follows automatically our conclusion on the basic issues already considered. Decision will be entered under Rule 50. Footnotes
1. SEC. 403. TAXATION OF EMPLOYEE ANNUITIES. * (a) Taxability of Beneficiary Under a Qualified Annuity Plan. - (1) General rule. - Except as provided in paragraph (2), if an annuity contract is purchased by an employer for an employee under a plan which meets the requirements of section 404 (a)(2) (whether or not the employer deducts the amounts paid for the contract under such section), the employee shall include in his gross income the amounts received under such contract for the year received as provided in section 72 (relating to annuities) except that section 72(e)(3) shall not apply. * * *
As existing prior to changes made by section 23(a), Act of September 2, 1958, "Technical Amendments Act of 1958" effective for taxable years beginning after December 31, 1957.↩
2. SEC. 22. GROSS INCOME. * * *
(b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
(2) Annuities, etc. - * * *
(B) Employees' annuities. - If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23(p)(1)(B), or if an annuity contract is purchased for an employee by an employer exempt under section 101(6)↩, the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subparagraph (A) of this paragraph.